Frank A. McNamee, Respondent, *v.* Joseph A. Zimmett, Appellant.

Third Department, November 15, 1923.

Insurance — action by district manager to recover amount of premiums paid on life insurance policies — plaintiff paid premiums to company less commissions without any agreement by insured to reimburse him — payment was voluntary and plaintiff cannot recover from insured.

A district manager of a life insurance company is under no obligation to an insured to pay the premiums to the insurance company, and if he does pay them without any request on the part of the insured or any agreement by the insured to repay them, the payment is voluntary and the manager cannot recover the amount from the insured.

Appeal by the defendant, Joseph A. Zimmett, from a judgment of the County Court of the county of Rensselaer in favor of the plaintiff, entered in the office of the clerk of said county on the

7th day of June, 1922, upon the verdict of a jury, and also from an order entered in said clerk's office on the 26th day of June, 1922, denying the defendant's motion for a new trial made upon the minutes.

*John W. Roddy*, for the appellant.

*George E. O'Connor* [*Thomas O'Connor* with him on the brief], for the respondent.

HASBROUCK, J.:

The plaintiff on his own statement should not be permitted to recover in this case. He was the district manager of the Equitable Life Assurance Society of the United States in Albany and Troy. Nobody could obtain a policy of insurance in that company in those localities except through him. In Troy one Mulhall was his sub-agent and one O'Neil was a solicitor attached to the sub-agency. The form of the transaction which is the subject of this litigation is the application by the defendant for two $5,000 policies of insurance. The evidence discloses no business reason for taking them out. A quarter of the annual premium which was paid to and accepted by O'Neil at the delivery of the policies was $150. The inference is that the annual total premium was $600. As matter of fact it was $588.80. The commission allowed by the company on the part payment of the premium was $235.52, leaving the amount accruing to the company from McNamee for the first year's premiums $353.28.

This amount, and not $600, was paid by McNamee, the plaintiff, to his company. The evidence does not disclose that he paid such premium in pursuance of any agreement made by his solicitor O'Neil with Zimmett, the defendant; nor that the plaintiff personally made an agreement with the defendant. The only agreement the defendant had was with the insurance company. This appears also clearly from the plaintiff's letter in which he says: " This business was paid for in cash by myself in exchange for your note. I made inquiry and was advised that you were a man of standing and character, and desiring to help Mr. O'Neil, I paid the company for the policy and gave him his commission." There is no evidence in the case that defendant gave any note for premiums. If he did it must have been to the company. If the note was made payable to O'Neil it would furnish undisputable evidence of the agreement, and liability of the defendant. There is no note. There was a payment volunteered by McNamee on the strength of the character of the defendant and the plaintiff's desire to help O'Neil. Having received $150 there was at risk the sum of $200, the difference between $350 and $150. There is no evidence of any agreement

made by O'Neil that McNamee should advance the premium for Zimmett. All there is is the fact that on the policy it says across the face, " This insurance is granted in consideration of the payment in advance of Two hundred ninety-four and 40 /100 dollars." That is a statement of the insurance company. When the defendant received his policies, having paid only on each $75 in cash and giving his agreement to pay $75 quarterly, he may well have thought the payment required to be given in advance had been accomplished. Whatever the statement indorsed on the face of the policy it contained besides these words, " This policy is based upon the payment of premiums annually; but premiums may be paid subject to the society's approval in semi-annual or quarterly instalments at the society's adopted rates for fractional premiums." It seems to me that it was under this language relying on the power of the district agent with the society that O'Neil could have made the arrangement for a quarterly payment. That it was permitted by McNamee appears from his letter. If such be the case, then there was no occasion for any agreement on the part of Zimmett to pay McNamee for any advance of premium. McNamee could arrange that with the society under the quarterly payment provision. He was not sworn as a witness upon the trial. Was it because he might have been asked how he finally settled with the society on these policies? If there was an agreement that McNamee was to carry the insurance for Zimmett until he could pay or until a specified time how is it reconcilable with the words of plaintiff's Exhibit 13: " I have advised Mr. O'Neil that I am willing to do anything that is fair in the matter but I am certainly not in position to carry your insurance? " If there had been any agreement on the subject would not McNamee have referred to it and called Zimmett's attention to his failure to perform it? The conclusion seems unavoidable that the insurance was a scheme by which Zimmett could get some temporary insurance and O'Neil could get a large part of the first year's premium, and in aiding the project McNamee so far as Zimmett was concerned was a volunteer. A volunteer is " one who has paid the debts of another without request, when he was not legally or morally bound so to do and when he had no interest to protect in making such payment." (*Irvine* v. *Angus,* 93 Fed. Rep. 633.) Clearly McNamee was not legally or morally bound to pay Zimmett's premiums. Nor had he any interest to protect. He created an interest when he made the payment. Before that time it did not exist. Zimmett did not request him or O'Neil to advance the first premium. The fact that McNamee paid it even on the theory of the unjust enrichment of the defendant is not enough. McNamee had not the right officiously to constitute

himself another's creditor. The defendant, unable to pay more than the first quarter, in pursuance of a claimed agreement with O'Neil to take back the policies handed them to him at the end of the quarter in October or one of them in January. The case in order to hold the defendant liable must contain facts from which it may reasonably be inferred in the absence of words that Zimmett should have expected to pay McNamee. There is no evidence that he knew McNamee in the transaction until long after the deal was made for the policies. There is plenty of evidence that he thought his creditor was the society itself. The transaction interpreted in the light of the amount of the first year's premiums and their distribution indicates that the risk of reimbursement was taken by McNamee, and for the consequence of non-payment by Zimmett he is himself at fault.

I advise the reversal of the judgment and the dismissal of the complaint, with costs.

COCHRANE, P. J., VAN KIRK, HINMAN and McCANN, JJ., concur.

Judgment and order reversed upon the law and complaint dismissed, with costs.